# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANNA RODRIGUEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-24-256-AMG |
| ) | |
| MARTIN O'MALLEY, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Anna Rodriguez ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f. (Doc. 1). The Commissioner has filed the Administrative Record ("AR") (Doc. 3), and the parties have fully briefed the issues (Docs. 11, 13, 14).[1] The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). (Docs. 9, 10). Based on the Court's review of the record and issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

---

[1] Citations to the parties' briefs refer to the Court's CM/ECF pagination. Citations to the Administrative Record refer to its original pagination.

1

**I.    Procedural History**

Plaintiff filed an application for SSI on October 22, 2021, alleging a disability onset date of October 11, 2021. (AR, at 11, 90, 169-76). The SSA denied the application initially and on reconsideration. (*Id.* at 90-100, 101, 102-14, 115). An administrative hearing was held on August 8, 2023. (*Id.* at 71-89). Afterwards, the Administrative Law Judge ("ALJ") issued a decision finding Plaintiff was not disabled. (*Id.* at 8-26). The Appeals Council subsequently denied Plaintiff's request for review. (*Id.* at 1-4). Thus, the ALJ's decision became the final decision of the Commissioner. *Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009); 20 C.F.R. § 404.981.

**II.   The Disability Standard and Standard of Review**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence from an acceptable medical source," such as a licensed physician or a licensed and certified psychologist; whereas the claimant's own "statement of symptoms, a diagnosis, or a medical opinion" is not sufficient to establish the existence of an impairment. 20 C.F.R. § 416.921; *see* 20 C.F.R. § 416.902(a), 416.913(a). A plaintiff is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden-shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is engaged in any substantial gainful activity; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functional capacity,[2] whether the impairment prevents the claimant from continuing claimant's past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 416.920(a)(4)(i)-(v). Plaintiff bears the "burden of establishing a prima facie case of disability under steps one, two, and four" of the SSA's five-step procedure. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005). If the plaintiff makes this prima facie showing, "the burden shifts to the Commissioner to show the claimant has the [RFC] to perform other work in the national economy in view of [claimant's] age, education, and work experience." *Id.* "The claimant

---

[2] RFC is "the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 416.945(a).

3

is entitled to disability benefits only if he is not able to perform other work." *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987).

This Court's review of the Commissioner's final decision is limited "to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Comm'r, SSA*, 952 F.3d. 1172, 1177 (10th Cir. 2020) (citation omitted). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023) (quoting *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010)); *see also Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (defining substantial evidence as "more than a scintilla, but less than a preponderance"). A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002). But "an agency decision that either applies an incorrect legal standard or is unsupported by substantial evidence is subject to reversal." *Staheli*, 84 F.4th at 905.

### III.   Administrative Decision

At Step One, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 22, 2021, the application date. (AR, at 13). At Step Two, the ALJ found Plaintiff had the following severe impairments: obesity, inflammatory arthritis, asthma, bilateral carpal tunnel syndrome, fibromyalgia, diabetes mellitus, depression, bipolar and related disorders, and anxiety and obsessive-compulsive related disorders. (*Id.*) At Step Three, the ALJ found Plaintiff had no impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (*Id*. at 14). The ALJ then determined Plaintiff had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except is limited to jobs that do not require the use of ladders, ropes or scaffolds; occasionally climb ramps and stairs; occasionally balance, crouch, stoop, kneel, crawl and bend; no exposure to dangerous machinery or moving machine parts as well as unprotected heights; must avoid concentrated exposure to respiratory irritants such as chemicals, dust, odors, fumes and gases, as well as extremes of temperature and humidity as well as poorly ventilated work areas; frequently handle, finger, feel and reach with bilateral upper extremities; capable of work in goal oriented jobs with simple, routine and repetitive instructions not done at an assembly line or at a production quota pace; limited to occasional decision-making, occasional changes of workplace setting and occasional changes to workplace routine; frequent contacts with supervisors and coworkers and occasionally with customers.

(*Id.* at 17).  At Step Four, the ALJ found Plaintiff did not have any past relevant work. (*Id.* at 24).  At Step Five, the ALJ determined that when considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy Plaintiff can perform, such as an inspector/packer, sub assembler, and small products assembler.  (*Id*. at 24-25).  Thus, the ALJ found Plaintiff had not been under a disability since October 22, 2021, the date Plaintiff filed her application. (*Id.* at 26).

**IV.    Issues Presented for Judicial Review**

Plaintiff raises two points of error. First, Plaintiff contends the ALJ failed to resolve a conflict between the Dictionary of Occupational Titles ("DOT") and the jobs the ALJ identified at Step Five. (Doc. 11, at 9-16; Doc. 14, at 4-7). Second, Plaintiff asserts the ALJ erred by failing to consider her use of a nebulizer when determining the RFC.[3] (Doc. 11, at 16-22; Doc. 14, at 2-4).

In response, the Commissioner argues that because the Tenth Circuit has not recognized the alleged conflict between the identified Step Five jobs and the DOT, the ALJ's decision is supported by substantial evidence. (Doc. 13, at 4-10). The Commissioner further contends the ALJ adequately considered Plaintiff's breathing difficulties in determining the RFC. (*Id.* at 10-13).

**V.    The ALJ Committed Reversible Error by Not Considering the Effect of Plaintiff's Nebulizer Use on Her Ability To Work.**

Plaintiff contends the ALJ erred by not adequately considering her use of a nebulizer as treatment for her asthma in formulating the RFC. (Doc. 11, at 16-22; Doc. 14, at 2-4). The Court agrees.

The ALJ found that Plaintiff had the severe impairment of asthma. (AR, at 13). During the administrative hearing, the ALJ acknowledged Plaintiff has suffered from asthma for many years, and Plaintiff provided the following testimony:

---

[3] "A nebulizer is '[a] device used to reduce liquid medication to extremely fine cloudlike particles' and is 'useful in delivering medication to deeper parts of the respiratory tract.'" *Klitz v. Barnhart*, 180 F. App'x 808, 809 n.2 (10th Cir. 2006) (quoting *Stedman's Medical Dictionary* 1184 (27th ed. 2000)).

> Q. And I also noticed that you had asthma.
>
> A. Yes, sir. I've had it for years.
>
> Q. Okay. And do you get it -- you take a number of nebulizers, I guess.
>
> A. Correct. And also --
>
> Q. That I see Albuterol, and so forth.
>
> A. Yes.
>
> Q. And with the asthma, do the medications take care of it once you use them?
>
> A. It just depends. You know, if it's too hot, like, if I get too hot, you know, I start coughing. Sometimes my inhalers can control it. Sometimes it doesn't. Sometimes I even have to take a breathing treatment. I'm able to take those four hours -- every four hours, so I mean, there's days where I have to take it just because I constantly cough and it's hard for me to breath[e]. But I've had asthma since I was little.
>
> Q. How often do you have to take those breathing treatments? It sounds like it's in the summer when it's hot from what you were saying.
>
> A. Correct. Probably two or three times a week. And like I said, maybe they'll be, like, three times a day because I can take them every four hours.

(AR, at 78-79).

In formulating the RFC, the ALJ acknowledged that Plaintiff's asthma symptoms

> are treated with prescription medication, including albuterol sulfate and Symbicort (2F/8). The claimant testified she starts to cough when she gets too hot, but sometimes her inhalers can control the coughing, which indicates her medication adequately manages her symptoms. However, the claimant also testified when her coughing is not controlled, she needs to use breathing treatments, which can be to or three times a week.
>
> Overall, the claimant generally exhibited no significant respiratory abnormalities (2F/15, 9F/19, 21). Her condition was also described as

>controlled (9F/8), which indicates her asthma is manageable. Furthermore, the record shows no visits to the emergency department or hospitalizations due to asthma-related symptoms.

(*Id*. at 19).  The ALJ included asthma-related limitations in the RFC, stating that Plaintiff "must avoid concentrated exposure to respiratory irritants such as chemicals, dust, odors, fumes and gases, as well as extremes of temperature and humidity as well as poorly ventilated work areas." (*Id*. at 17).

However, the ALJ's decision did not address how Plaintiff's ability to work might be affected during times when Plaintiff needs a nebulizer breathing treatment to control her coughing – perhaps two to three times per week and three times per day.  The ALJ apparently reasoned that the prohibition on exposure to respiratory irritants and extremes of temperature and humidity would render Plaintiff's nebulizer unnecessary. Applying SSA authority to the record as a whole, the Court concludes substantial evidence does not support a finding that these prohibitions would completely obviate Plaintiff's nebulizer use.  Rather, substantial evidence supports the conclusion that the use of a nebulizer could affect Plaintiff's ability to work, especially considering the vocational expert's ("VE") testimony that if Plaintiff needed to take additional breaks during a workday, it would preclude competitive employment.  (*Id.* at 88).

The Court is persuaded that remand is appropriate because this case falls under the Tenth Circuit's precedent in *Klitz v. Barnhart*, 180 F. App'x 808, 810 (10th Cir. 2006).  In *Klitz*, there was testimony and record evidence that the plaintiff used a nebulizer to treat her chronic obstructive lung disease.  *Id.* at 809-10.  The RFC stated that the plaintiff "cannot work in environments where she would be exposed to dust." *Id.* at 809.  The Court

8

held that "[i]n making an RFC finding when, as here, a medically determinable impairment imposes environmental restrictions, an ALJ must consider any resulting limitations and restrictions that may affect other work-related abilities and reduce a claimant's ability to work." *Id*. at 810 (citing 20 C.F.R. § 416.945(d)). The Court remanded because "[a]lthough the ALJ acknowledged [the plaintiff's] use of the nebulizer, he never addressed any effect it might have on her ability to work." *Id*. The Court directed that on remand "the ALJ should develop certain details of [the plaintiff's] use of her home nebulizer," specifically whether the nebulizer was portable and whether her use occurred at "random, uncontrollable times" or predictable intervals that would fit into a normal work schedule. *Id*. As in *Klitz*, the ALJ in this case found Plaintiff's asthma to be a severe impairment and imposed environmental restrictions in the RFC based on this condition, but failed to discuss how her need for a nebulizer might affect her work day. Thus, the RFC is not supported by substantial evidence, and remand is required.

Remand is also consistent with lower courts' applications of *Klitz*. *See Kelley v. Kijakazi,* No. CIV-21-1099-AMG, 2023 WL 425132, at *4 (W.D. Okla. Jan. 26, 2023) (reversing and remanding for ALJ to "consider and discuss the record evidence regarding Plaintiff's use of the nebulizer, determine whether such evidence does or does not affect the RFC, and question the VE accordingly."); *Haynes v. Kijakazi*, No. CIV-21-217-AMG, 2022 WL 1721060, at *4 (W.D. Okla. May 27, 2022) (same); *Martin v. Kijakazi*, No. CIV-20-605-AMG, 2022 WL 676976, at *3 (W.D. Okla. Mar. 7, 2022) (same); *White v. Kijakazi*, 2021 WL 4434306, at *4 (E.D. Okla. Aug. 31, 2021) (reversing and remanding "for further consideration of the effect of [Plaintiff's] use of a nebulizer for breathing

treatments on her RFC and, by extension, her ability to work"), *report and recommendation adopted*, 2021 WL 4430862 (E.D. Okla. Sept. 27, 2021); *Knudtson v. Comm'r of SSA*, 2020 WL 5761073, at *3 (E.D. Okla. Sept. 28, 2020) ("[R]emanded for further consideration of the effect Claimant's frequent use of a nebulizer for breathing treatments would have on her ability to perform work"); *Tennyson v. Astrue*, 2011 WL 1298961, at *5 (N.D. Okla. Mar. 31, 2011) (remanding for ALJ to make specific findings consistent with *Klitz* at to (1) whether the plaintiff's condition "would have allowed for use of a portable nebulizer to accommodate plaintiff's work away from the home," (2) "the extent it was medically necessary for plaintiff's use of the nebulizer and whether use of the nebulizer could occur prior to, during established breaks, [or] after work to treat his condition," (3) "whether plaintiff's asthma could be controlled through use of an inhaler, rather than [a] nebulizer to accommodate sustained work activities" and (4) "whether, even assuming plaintiff's use of the nebulizer was medically necessary . . ., [the plaintiff's] use would have altered [his] RFC in any event").

Accordingly, on remand, the ALJ must consider and thoroughly discuss the record evidence regarding Plaintiff's need for and use of the nebulizer, determine whether such evidence does or does not affect the RFC and Plaintiff's ability to work, and question the VE accordingly.  The analysis on remand may be affected by the ALJ's consideration of Plaintiff's nebulizer use.  Thus, the undersigned does not address Plaintiff's remaining argument.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

## VI.  Conclusion

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings.

**SO ORDERED** this 4th day of September, 2024.

AMANDA MAXFIELD GREEN
UNITED STATES MAGISTRATE JUDGE